Mary C. Geddes
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
550 West Seventh Avenue, Suite 1600
Anchorage, Alaska 99501
(907) 646-3400

Attorney for Defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>LARRY ALLEN BEACH,<br><br>Defendant. | Case No. A05-0086 CR (JWS)<br><br>**DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR AN EVIDENTIARY HEARING** |

Defendant, LARRY ALLEN BEACH, by and through counsel Mary C. Geddes, Assistant Federal Defender, files this sentencing memorandum in advance of sentencing on January 10, 2006. Mr. Beach has pleaded guilty to the felony charge of attempted possession of a controlled substance with intent to distribute.

In this post-*Booker* case, this court must impose the statutory minimum sentence of 5 years' incarceration, as well as a subsequent minimum term of 4 years of supervised release. PSR ¶¶ 75, 79. A $100 special assessment must also be imposed. Mr. Beach respectfully requests that his sentence be limited to the minimum-mandatory terms of incarceration and supervision, that

the court "strongly recommend" his participation in the RDAP, and that this court not impose any restriction on his eligibility for federal contracts or employment.

In its sentencing memorandum, the government has recommended that this court impose a sentence that is three years longer than the mandatory sentence. It recommends a sentence of 97 months, representing the "low end" of the advisory Sentencing Guideline range. The relevant Sentencing Guideline range is premised upon the determination that Mr. Beach's criminal history category is II, and an adjusted offense level of 29.

I.      The Government's Memorandum and Mr. Mr. Beach's Responses

The government's position – that Mr. Beach should not receive the minimum five years, but an eight-year sentence instead – is based on the following:  (a) its exercise of prosecutorial discretion has already provided Mr. Beach with sufficient leniency, because the government could have superseded its indictment, but choose not to; (b) Mr. Beach has a sporadic criminal history dating back to 1976; (c) he resorted to drugs to support himself, as indicated by this offense and a "small marijuana grow and distribution operation" in his home; and, recently, (d) Mr. Beach engaged in hostile and threatening conduct towards a correctional officer.

Counsel for Mr. Beach responds to each argument.

(a)     While the United States Attorney may have had the discretion to determine whether or not to charge an individual with a particular crime, one which potentially involved higher statutory penalties, the district court's consideration must be limited to the sentencing laws that are relevant to the offense of conviction.

(b)     Mr. Beach's criminal history cannot be characterized as anything other than minor, and almost completely related to driving while drinking.

(c)     Mr. Beach has conceded his intent to share the methamphetamine with others. But, there was no evidence whatsoever that Mr. Beach was "supporting" himself by the distribution of methamphetamine, or planning any sales, as speculated by the government. This was a wholly aberrational act, albeit a terribly costly lapse in judgment.

The government's further characterization that investigators recovered a "marijuana grow and distribution operation," is simply misleading. The undersigned inspected the physical evidence, took photos, and recalls her conversation with an agent involved in the search of Mr. Beach's house. The plants were described as "small scraggly things" and the "operation" consisted of two bulbs and a small voltage regulator (ballast). Obviously, the quantity of marijuana found on Mr. Beach's property indicated personal use.

(d)     As for Mr. Beach's alleged recent "threatening conduct," it consisted of Mr. Beach venting in a long-distance phone conversation, with a friend, about what he believed was outrageous treatment by a correctional officer. It was not a threat made to the officer, or intended by Mr. Beach to be conveyed to him. It should be noted that Mr. Beach has no substantial experience with institutional life. He has been previously convicted only of misdemeanor offenses, and his lengthiest time in jail thus far was 40 days in Palmer. Mr. Beach has no history of assaultive conduct.

II.     Why a Five-year Sentence Is Sufficient to Comply with the Purposes of the Sentencing Reform Act

A.     *Application of The Sentencing Reform Act, 18 U.S.C. § 3553(a)*

Under the Sentencing Reform Act, the district court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of

this subsection." Among the purposes are: "(A) a need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . ." The district court, in sentencing, is required to consider "the nature and circumstances of the offense and the history and characteristics of the defendant," *id.*, and "the need for the sentence imposed" to satisfy the criteria in 18 U.S.C. § 3553. *United States v. Booker*, ___ U.S. ___, 125 S. Ct. 738, 770, 160 L. Ed. 2d 621 (2005) (App. A) (Breyer, J.).

B.    *The "Correctional Treatment" Most Needed For This Defendant is Substance Abuse Treatment*

Mr. Beach, and the many individuals who have written to this court on his behalf, has discussed his need for substance abuse intervention and treatment as the form of "correctional treatment" which will best address his criminal conduct.

As a condition of participating in the RDAP, the Bureau of Prisons requires a 500-hour commitment within the institution, and aftercare while a defendant is transitioning to community life. Additionally, Mr. Beach will be subject to conditions of supervised release requiring periodic drug screening to ensure that Mr. Beach has not resumed the use of any drug.

C.    *Mr. Beach's Age Weighs Against a Significant Risk of Recidivism*

Under the mandatory guidelines, age was not relevant pursuant to U.S.S.G. § 5H1.1, unless in unusual cases and in combination with other factors. However, age is a "characteristic of the defendant," *see* 18 U.S.C.A. § 3553(a)(1), which "shall" be considered, *id.*, particularly if it is

4

relevant to a determination of *"the need for the sentence imposed*."  18 U.S.C. § 3553(a)(2) (italics

added).  Post-*Booker* courts have noted that recidivism is markedly lower for older defendants, and

have declined to impose guideline sentences because of it.  *United States v. Lucania*, 379 F. Supp.

2d 288, 297 (E.D.N.Y. July 28, 2005); *see also United States v. Carmona-Rodriguez*, 2005 WL

840464, *4 (S.D.N.Y. April 11, 2005); *Simon v. United States*, 316 F. Supp. 2d 35, 2005 WL 300073

(E.D.N.Y March 17, 2005); *United States v. Carvajal*, 2005 WL 476125 (S.D.N.Y. Feb. 22, 2005);

*United States v. Nellum* , 2005 WL 300073 (N.D. Ind. Feb. 3, 2005).

The decision in *Carmona-Rodriguez*, *supra*, notes that defendants "over the age of

forty . . . exhibit markedly lower rates of recidivism in comparison to younger defendants."  The

Sentencing Commission's study, *Measuring Recidivism:  The Criminal History Computation Of The*

*Federal   Sentencing   Guidelines*  (2004),   available   at   http://www.ussc.gov/publicat/

Recidivism_General.pdf, shows that Mr. Beach is in a group (41-50) with a relatively low possible

risk of re-offending.

D.    *Mr. Beach's Long History of Legitimate Employment and Consequent Employability*
      *Also Underline His Low Risk of Recidivism*

Similar to "age," a defendant's employment was a discouraged factor under the

mandatory Guideline regime, *see* U.S.S.G. § 5H1.5 "not ordinarily relevant," and could only be a

basis for a downward departure in unusual circumstances which removed it from the heartland.  *See,*

*e.g., United States v. Brady,* 895 F.2d 538, (9th Cir. 1990).  Now, this court may consider and

incorporate   such   information,   18   U.S.C.   §   3553(a)   ("the   history   and   characteristics   of   the

defendant"), into its determination as to the need for the sentence imposed.  Section 3553(a)(2).

5

Larry Beach has had a lengthy history of legitimate employment. Recently, Mr. Beach developed local small businesses, starting a restaurant and a landscaping business. With 30 years of experience in heavy equipment operation, Mr. Beach fully expects he will be employed upon his return to the community. His employability lowers his chance of re-offending.

According to the June 2005 issue of Federal Probation Journal:

> While the exact relationship between employment and recidivism is complex and not fully understood, there can be no doubt that it is vitally important in the re-entry process.

> A good job is likely to serve as a deterrent to illegal behavior by limiting opportunities for misconduct and providing social incentives for crime-free behavior.

> . . . Further evidence of the value of employment in the reentry process can be found in recent statistics gathered by the U.S. Probation and Pretrial Services System. In 2003, unemployed offenders under their supervision were revoked at a rate that was more than 500 percent higher than that for those who were employed (Burris et al., 2004). Eighty percent of the offenders who were revoked that year were unemployed.

Federal Probation, Vol. 69, No. 1 at 1.

E.    *What the Letters to the Court Show: Friends and Family Support Is Extraordinarily High; Larry Beach Is a Hard-working, Talented Individual; He Has Been Talking to Friends and Family about His Problem and Is Eager to Deal with it; His Actions Are Aberrational*

The letters filed with the court are voluminous. They testify to Larry Beach's talents and abilities, his great heart and generosity, his reliability, his perfectionism, and drive to succeed. The letters show how closely his self-esteem has been derived from his work. The letters also reflect the large community of individuals, both in Arizona and in Alaska, who have regular contact with Larry, and who pledge their support of him – and his abstinence – both during his incarceration and after his release. Many of the writers characterize his crime as aberrational. Finally, the letters attest

to Larry's own awareness of his problem, his commitment to confronting it, and his eagerness to

have a "normal life" after rehabilitation.  They are summarized below:

Patricia Miller:
♦    Mother of Larry Beach, very close, knows him as well as anyone
♦    He stays in touch through visits, phone calls, letters, and Internet
♦    "He and several of his friends, I have discovered, were using the drug heavily" in summer 2005
♦    I know he had no intention of selling the drug
♦    For all of adult life, Larry has been a good hard worker
♦    He has held jobs responsible, with pride of performance
♦    Has a good reputation among construction companies in Arizona, Alaska
♦    Suspects drug use was to keep up with pace of work
♦    His drug use was previously limited to marijuana
♦    "Larry is anxious to confront (his problems with drugs) and get on with it"

Daniel DeBoer:
♦    Lifelong Alaska resident, lives in the Valley now
♦    Larry is close family friend
♦    Met Larry in construction trades
♦    He is one of the best operators around
♦    Loaned Larry $10,000 to start his restaurant
♦    Larry paid me back even though business failed
♦    Larry spends his time working or fishing, hard-working and productive
♦    5 years seems like a life sentence for him
♦    Initially suicidal and embarrassed, now seems eager to make the best
♦    Larry could do some good for the community, talk in the schools, work with kids

Joel Bell:
♦    Business manager, financial secretary of IBEW
♦    Has known Larry for 36 years, beginning in junior high school
♦    Lived together, worked together
♦    Attended wedding
♦    He's intelligent, talented, and hard-working
♦    Never will be a burden to society, he's always gainfully employed
♦    Talked on phone but hadn't seen him in the last year
♦    Surprised to hear of addiction – never had any idea of it
♦    He is type that will learn from experience
♦    He seems genuinely motivated
♦    He will have lots of support from family and friends during prison and after

Sharon Treat:
- ♦ Current realtor; former respiratory therapist
- ♦ Friends with Larry Beach since 1978
- ♦ This offense is "just not his character"
- ♦ Larry is a hard worker and pays his bills
- ♦ "Amazing" equipment operator
- ♦ very close to his mother
- ♦ Did not know he had a drug problem
- ♦ Pledges to help him get back to a normal life

Richard and Dora Bustamonte:
- ♦ Uncle and aunt
- ♦ Larry is good person, been good to his family
- ♦ Larry is good worker
- ♦ Work is important to him
- ♦ He wants to do what is right, and get help, get back to work

Barry Wade Beach:
- ♦ Younger brother of Larry Beach
- ♦ Larry was always teaching me
- ♦ He has always been a leader on his construction crews, very responsible
- ♦ A few years ago, I noticed a change; asked him about drugs; then he denied it
- ♦ I have spoken to him during his incarceration – he is remorseful, needs help
- ♦ He is a very strong person, morally and mentally
- ♦ Needs a shorter sentence and a longer rehabilitation

Raymond McPherson:
- ♦ 62 years old
- ♦ Friends with Larry Beach for 24 years
- ♦ Very talented equipment operator
- ♦ Eager to help and train others
- ♦ Worked along side him for 9 ½ years on the Slope
- ♦ I had a problem with alcohol – "Larry wasn't as bad as me"
- ♦ I got sent to treatment – this might not have happened if Larry was sent, too
- ♦ "Reasonably certain" Larry will get this problem behind him

Raymond and Judy Holt:
- ♦ Known Larry from childhood
- ♦ Worked on the Pipeline together, North Slope, and construction business in Arizona
- ♦ Could always count on Larry to give him a hand, give him a place to stay
- ♦ In summer I suspected some kind of drug use, but never saw it and he never tried to get me involved
- ♦ High intelligence and work ethics will serve him well in drug treatment

John Lawrence:
- ♦ Old friend, can't believe even remotely Larry could be in this situation
- ♦ Known him for over 36 years, since he was 17
- ♦ He always worked and supported himself, even if not at the wages he would have liked
- ♦ "Prideful and self-sufficient"
- ♦ Bet my bottom dollar he is kicking himself for not confronting his problem sooner
- ♦ Believe Larry will work towards abstinence and will again be productive citizen

Connie Harrington:
- ♦ Sister to Larry
- ♦ Know him as a "determined strong hard working cowboy"
- ♦ Did not know of his addiction
- ♦ He was always proud (of his hard work), why he allowed drugs in his life I don't know
- ♦ Recommends that he be sent to Arizona so he can be close to family
- ♦ All family members willing and able to help him
- ♦ Larry wants to get help and go back to a normal life

Richard and Teri Hone:
- ♦ Known Larry since 1994
- ♦ Lives in Alaska
- ♦ He's a good blade operator and has good work ethic
- ♦ He has a big heart and helps others
- ♦ He'd be successful in drug treatment
- ♦ We will encourage him to live drug free life

Ronald Hone:
- ♦ Good friend for a long time
- ♦ He's a "good hand" at "just about any job he has ever worked at"
- ♦ He always contributes to children's fund-raising
- ♦ He always pays rent on time
- ♦ He's the first to offer a hand
- ♦ He means well, he needs a little help with his drug problem
- ♦ Community is better off with him in the workforce

Melissa Boone:
- ♦ Younger sister to Larry
- ♦ He "was the Dad I never knew" and a great uncle to her children
- ♦ We had an abusive alcohol father who left, bad role model for Larry
- ♦ Larry was always dependable, always had a great connection to family
- ♦ "Hardest working man around," sometimes doesn't know when to quit
- ♦ Work is close to perfect, he's talented and smart

9

- ♦ He doesn't like to fail, she suspects he used drug to keep himself going after restaurant failure, he was trying to do too much, was ashamed
- ♦ He wants to better himself, he'd do well in drug rehab

Dennis Amsbaugh:
- ♦ Larry worked for him in 80s and 90s
- ♦ "Primer mover," exceptional operator, did as he was told, had patience to be safe, reliable worker who never slacked off
- ♦ Talent and ability was superb
- ♦ Saddened to hear he has succumbed to drugs, he is well worth going through rehab
- ♦ Would re-hire him in a minute

    F.    *An Evidentiary Hearing is Requested*

The undersigned has received messages from family members and friends, some who apparently are traveling long distances from out-of-state, who wish to testify on Mr. Beach's behalf. To the extent any of the factual premises put forth in this memorandum are disputed, an evidentiary hearing may be required.

DATED this 5th day of January, 2005.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA

/s/ Mary C. Geddes
Assistant Federal Defender
Alaska Bar No. 8511157
550 West 7th Avenue, Suite 1600
Anchorage, AK  99501
Ph:  (907) 646-3400
Fax:  (907) 646-3480
mary_geddes@fd.org

Certification:

I certify that on January 5, 2006, a copy of the
foregoing document was served electronically on:

Frank V. Russo, Esq.
U.S. Probation/Pretrial Services

/s/ Mary C. Geddes